# United States Court of Appeals
## For the First Circuit

---

No. 14-1869

DARYL OVERKA, ET AL.,

Plaintiffs, Appellants,

v.

AMERICAN AIRLINES, INC.,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

---

Before

Lynch, Chief Judge,
Kayatta and Barron, Circuit Judges.

---

Shannon Liss-Riordan, with whom Lichten & Liss-Riordan, P.C. was on brief, for appellants.
Michael Vance Powell, with whom Amy C. Mariani, David J. Volkin, and Fitzhugh & Mariani LLP were on brief, for appellee.

---

June 12, 2015

---

**BARRON**, **Circuit Judge**. For the third time in recent years, "skycaps" -- airport porters who, among other things, assist passengers with curbside check-in -- ask us to decide whether they may sue an airline for alleged violations of state law arising out of the imposition at airports of a $2.00 per-bag, curbside check-in fee. As in those previous cases, and on the basis of those prior precedents and intervening precedent, we hold that federal law preempts these skycaps' state statutory and common law claims.

## I.

The suit before us began on April 24, 2008, when a class of skycaps working at Logan Airport in Boston, Massachusetts, and at other airports throughout the country, brought suit against American Airlines. The suit arose after American began charging passengers $2.00 per bag to use curbside check-in services at airports across the country. According to the plaintiffs, American failed to adequately notify customers that skycaps would not receive the proceeds from the new charge. The plaintiffs further claimed that their compensation "decreased dramatically" following the introduction of the new charge, as fewer passengers tipped skycaps on top of paying the per-bag charge.

The plaintiffs thus sued American, on behalf of the Massachusetts skycaps, for violations of the Massachusetts Tips Law, Mass. Gen. Laws. ch. 149 § 152A. The plaintiffs also sued

- 2 -

American on behalf of both those skycaps and the others in the class for tortious interference with the "implied contractual and/or advantageous relationship that exists between skycaps and [American's] customers" and unjust enrichment or quantum meruit.[1]

American filed a motion to dismiss in May of 2014 after the case was reopened following two stays. American argued that two recent circuit precedents, DiFiore v. American Airlines, Inc., 646 F.3d 81 (1st Cir. 2011), and Brown v. United Airlines, Inc., 720 F.3d 60 (1st Cir. 2013), cert. denied, 134 S. Ct. 1787 (2014), compelled the conclusion that the Airline Deregulation Act, 49 U.S.C. § 41713(b)(1), preempted each of the skycaps' claims. The District Court agreed. Following a short hearing on American's motion, the District Court issued an order of dismissal in August of 2014. The plaintiffs now appeal that decision.

## II.

In 1978, "as part of a wave of deregulatory measures," DiFiore, 646 F.3d at 85, Congress enacted the Airline Deregulation

---

[1] The plaintiffs also brought a retaliation claim under state law, see Mass. Gen. Laws ch. 149 § 148A, alleging that American had implemented a "no-tipping" policy in response to skycaps' pursuing such claims. The plaintiffs later agreed to waive this claim, however, in light of American's decision to rescind the "no-tipping" policy. In addition, the plaintiffs -- who seek restitution and statutory damages -- initially sought injunctive relief as well, but they voluntarily withdrew all of their claims for injunctive relief after American agreed to stop charging the per-bag curbside check-in fee.

Act (ADA), "which largely deregulated domestic air transport," Am. Airlines, Inc. v. Wolens, 513 U.S. 219, 222 (1995).  The ADA sought to promote "efficiency, innovation, and low prices" in the airline industry through "maximum reliance on competitive market forces and on actual and potential competition."  49 U.S.C. §§ 40101(a)(6), (12)(A).  "To ensure that the States would not undo federal deregulation with regulation of their own," Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378 (1992), Congress included an express preemption clause in the ADA, which provides that

> a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1).[2]

Our Circuit has in recent years twice applied that provision to preempt claims brought by skycaps arising out of

---

[2] The original version of the ADA contained a preemption clause that used slightly differently wording.  See Pub. L. No. 95-504, § 4(a), 92 Stat. 1705, 1707-08 (1978) (codified at 49 U.S.C. app. § 1305(a)(1) (1982)) (preempting state laws "relating to rates, routes, or services").  The changes in wording -- which were made when Title 49 was recodified -- were merely stylistic and were "not intend[ed] to impair the applicability of prior judicial case law interpreting these provisions."  H.R. Rep. No. 103-677, at 83 (1994) (Conf. Rep.), reprinted in 1994 U.S.C.C.A.N. 1715, 1755.

airlines' introduction of fees for curbside check-in services. First, in DiFiore v. American Airlines, Inc., which was decided in 2011, we held that the ADA preempted skycaps' claims that American's per-bag fees violated the Massachusetts Tips Law.[3] 646 F.3d at 87-90. In so holding, we explained that the airline's "conduct in arranging for transportation of bags at curbside into the airline terminal en route to the loading facilities is itself a part of the 'service' referred to in the federal statute, and the airline's 'price' includes charges for such ancillary services as well as the flight itself." Id. at 87. We thus concluded that, as applied in the case, the Tips Law "directly regulates how an airline service is performed and how its price is displayed to customers," which was precisely what the ADA sought to avoid. Id. at 88.

Two years later, we resolved the further question of whether the same result follows for certain common law claims that targeted the same $2.00 charge. In that case, Brown v. United Airlines, Inc., a separate set of skycaps had brought common law claims for unjust enrichment and tortious interference arising out

_____

[3] The DiFiore plaintiffs, in addition to their claims under the Tips Law, initially brought common law claims identical to the ones now before us. By the time their case reached this Court, however, only their Tips Law claims remained. See 646 F.3d at 84, 89.

of two airlines' imposition of $2.00 baggage fees for curbside service.  720 F.3d at 62.  We held that the ADA preempted these common law claims.

We explained in Brown that DiFiore "conclusively resolves" in the airlines' favor the "linkage" issue -- i.e., the issue of whether laws regulating the imposition of baggage-handling fees "relate[] to a price, route, or service of an air carrier" within the meaning of the ADA preemption clause. Id. at 64.  We further concluded that the common law, "no less than positive law," constitutes a "provision having the force and effect of law" within the meaning of that same clause. Id. at 64-65; see 49 U.S.C. § 41713(b)(1) ("Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." (emphasis added)).  And, finally, we held that the skycaps' claims did not fit within the so-called "Wolens exception" to preemption under the ADA. Brown, 720 F.3d at 70-71.

That exception comes from the Supreme Court's decision in American Airlines, Inc. v. Wolens.  There, the Supreme Court held that the ADA did not preempt breach of contract claims arising

- 6 -

out of an airline's frequent flyer program because those claims had sought remedies for violations of self-imposed, not state-imposed, obligations.  See 513 U.S. at 228-33.

The plaintiffs in the present case argue that, notwithstanding DiFiore and Brown, their claims -- which are for violations of the Massachusetts Tips Law (like in DiFiore) and tortious interference and unjust enrichment (like in Brown) -- are not preempted.  They rely on intervening precedents to explain why neither DiFiore nor Brown controls, despite their seeming applicability.  But the plaintiffs' arguments are unconvincing.

**A.**

With respect to the common law unjust enrichment and tortious inference claims, the plaintiffs argue that the Supreme Court's recent decision in Northwest, Inc. v. Ginsberg, 134 S. Ct. 1422 (2014), undermines Brown's holding that skycaps' "unjust enrichment and tortious interference claims fall outside [the Wolens exception's] confines," Brown, 720 F.3d at 70.

The Supreme Court in Ginsberg held that the ADA preempted a customer's claim alleging that an airline had breached the implied covenant of good faith and fair dealing.  The claim asserted that the airline had committed the breach by terminating the customer's membership in the airline's frequent flyer program on what the customer deemed to have been arbitrary or unlawful

- 7 -

grounds.  134 S. Ct. at 1430-32.  In finding that claim preempted, the Court held that the Wolens exception did not apply to the customer's claim.  The Court explained that Minnesota law -- the relevant law in the case, see id. at 1427 n.1 -- disabled parties from contracting out of the implied covenant of good faith and fair dealing, and thus that the covenant was a "state-imposed obligation" rather than a self-imposed one under Wolens.  Id. at 1432.  Consistent with that characterization, the Court also noted that Minnesota imposed the implied covenant on all contracts except employment contracts, which illustrated that "the application of the implied covenant depends on state policy choices."  Id.

The plaintiffs, in arguing that Ginsberg undermines Brown, rely on the fact that Ginsberg characterized the Wolens exception as turning on whether a common law claim "is based on a state-imposed obligation or simply one that the parties voluntarily undertook," id. at 1431, and as extending to common law claims "based on the parties' voluntary undertaking," id. at 1430, rather than to only "routine breach-of-contract claims," Wolens, 513 U.S. at 232.  According to the plaintiffs, this description of the Wolens exception undermines Brown's holding that deemed preempted skycaps' unjust enrichment and tortious interference claims arising out of airport baggage fees identical to those currently at issue.  But we do not agree.

- 8 -

The plaintiffs are of course correct that an intervening, on-point Supreme Court opinion can erode the precedential value of a prior panel opinion. See, e.g., United States v. Rodriguez, 311 F.3d 435, 438-39 (1st Cir. 2002). And the Supreme Court's decision in Ginsberg does postdate Brown. But, contrary to the plaintiffs' contentions, Ginsberg did not cast doubt on Brown. If anything, Ginsberg supports Brown's reasoning. See Ginsberg, 134 S. Ct. at 1429 (approvingly citing Brown, 720 F.3d at 68, for the proposition that the ADA preemption provision extends to common law claims).

Ginsberg concluded in no uncertain terms that the implied covenant of good faith and fair dealing was not an obligation to which the parties had agreed, that the covenant instead constituted a "state-imposed obligation" under the applicable law, and thus that "the reasoning of Wolens" meant that the ADA preempted the customer's implied covenant claim. Id. at 1432. Nothing in Ginsberg, therefore, undermines our reasoning in Brown about the application of the Wolens exception to the common law claims the plaintiffs press here, as those claims, too, seek to enforce a similarly "state-imposed" obligation. In that regard, Brown held first that the unjust enrichment claims fell outside the Wolens exception because they were "predicated on the lack of any agreement" between the parties and instead turned on external

- 9 -

considerations by which the parties had not agreed to be bound. 720 F.3d at 71. And Brown held second that the tortious interference claims likewise fell outside the Wolens exception because they "sound[ed] in tort, not contract," and "[t]ort law is not a privately ordered obligation," but rather is imposed by the state. Id. The District Court was thus correct to conclude that the plaintiffs' common law claims, which the plaintiffs concede are the same claims brought in Brown, are preempted under the ADA.

**B.**

That leaves the plaintiffs' claims under the Massachusetts Tips Law. See Mass. Gen. Laws. ch. 149 § 152A. The plaintiffs contend that, notwithstanding DiFiore v. American Airlines, Inc., we must reverse and remand the District Court's decision with respect to their Tips Law claims in light of this Court's recent decision in Massachusetts Delivery Association v. Coakley, 769 F.3d 11 (1st Cir. 2014).

In Massachusetts Delivery Association, we summarized the Supreme Court's holding in Ginsberg and explained that the Court's preemption analysis in that case "focused not on the claim in the abstract, but on the underlying facts." 769 F.3d at 18. We likewise concluded that, in answering the preemption question under the Federal Aviation Administration Authorization Act

- 10 -

(FAAAA) -- which contains a preemption provision[4] "generally construed in pari materia" with the ADA's nearly identical provision, Tobin v. Fed. Express Corp., 775 F.3d 448, 454 n.4 (2014) -- a "court must engage with the real and logical effects of the state statute, rather than simply assigning it a label." Mass. Delivery Ass'n, 769 F.3d at 20.

The plaintiffs take from these passages that Massachusetts Delivery Association "held" that analysis of preemption under the FAAAA or ADA "requir[es] an evidentiary record." Appellant Br. 24. DiFiore, the plaintiffs contend, decided the "linkage" question -- i.e., that the skycaps' Tips Law claims "related to a price, route, or service of an air carrier" -- without the benefit of an evidentiary record "regarding what actual effect it had, or would have, on the airlines to discontinue" the baggage fee. Appellant Br. 24. And thus, the plaintiffs argue, DiFiore is no longer binding in a case like this where there is also no factual record of the impact that applying

---

[4] See 49 U.S.C. § 14501(c)(1) ("[A] State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.").

the remedies afforded by the state tipping law would have on the airline's prices or services.

But Massachusetts Delivery Association did not announce a categorical rule that an airline always needs a record on the effect of the plaintiffs' claim on its prices or services in order to defeat preemption under the FAAAA, let alone the ADA. Rather, in deciding the preemption question, Massachusetts Delivery Association explicitly reaffirmed our previous holding "allow[ing] courts to 'look[] to the logical effect that a particular scheme has on the delivery of services or the setting of rates.'" 769 F.3d at 21 (second alteration in original) (quoting N.H. Motor Transp. Ass'n v. Rowe, 448 F.3d 66, 82 n.14 (1st Cir. 2006), aff'd, 552 U.S. 364 (2008)). Massachusetts Delivery Association therefore supplies no basis for declining to follow DiFiore, which relied on just that logical effect in finding preemption of identical claims under the Massachusetts Tips Law. And so DiFiore controls here and requires that we affirm the District Court's ruling that the plaintiffs' claims under the Massachusetts Tips Law are preempted.

## III.

Contrary to the plaintiffs' contentions, both DiFiore and Brown -- which together hold that the Airline Deregulation Act

- 12 -

preempts the claims before us -- remain good law.  We thus affirm the District Court's decision to dismiss the plaintiffs' claims.