**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 14-1899

UNITED STATES OF AMERICA,

Appellee,

v.

JESÚS NEGRÓN-ROSSY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José A. Fusté, U.S. District Judge]

Before

Torruella, Stahl, and Kayatta,
Circuit Judges.

Leslie W. O'Brien on brief for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, Chief,
Appellate Division, Francisco A. Besosa-Martínez, Assistant United
States Attorney, and Rosa Emilia Rodríguez-Vélez, United States
Attorney, on brief for appellee.

October 23, 2015

**Per curiam**.  Jesús Negrón-Rossy pled guilty to one count of conspiracy to import a controlled substance, in violation of 21 U.S.C. §§ 952, 963, and 960(a)(1) and (b)(1)(B), and one count of conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A)(ii).  The district court sentenced Negrón-Rossy to a prison term of 188 months.  On appeal, Negrón-Rossy challenges the district court's application of a sentencing enhancement based on his role as an organizer, leader, manager, or supervisor of the charged conspiracy.  We affirm.

From approximately 2010 to 2013, a group of employees and affiliates of the San Juan Seaport conspired to import large quantities of cocaine and heroin into Puerto Rico on containerized cargo vessels.  Negrón-Rossy, a former truck loader and checker at the Seaport, was among ten individuals indicted in connection with the conspiracy.

On March 17, 2014, the day on which his case was scheduled to go to trial, Negrón-Rossy pled guilty.  A presentence investigation report ("PIR") was subsequently completed detailing Negrón-Rossy's role in the conspiracy, and it recommended that Negrón-Rossy's offense level be increased by two points based on his role as an organizer, leader, manager, or supervisor of the conspiracy.  See U.S. Sentencing Guidelines Manual § 3B1.1(c) ("If the defendant was an organizer, leader, manager, or supervisor in

- 2 -

any criminal activity . . . increase by 2 levels."). Negrón-Rossy disputed the quantity of drugs attributable to him personally, but he did not otherwise dispute the facts contained in the PIR, nor did he appear to challenge the application of an enhancement based on his supervisory role.

Negrón-Rossy was sentenced on August 4, 2014 to a prison term of 188 months. This sentence represented the low end of the applicable guideline range based on Negrón-Rossy's total offense level - including the § 3B1.1(c) enhancement - and his criminal history. At the sentencing hearing, neither the parties nor the district court addressed the enhancement.

The government contends that Negrón-Rossy waived his right to contest the application of a § 3B1.1(c) enhancement. See United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002) ("A party waives a right when he intentionally relinquishes or abandons it. This is to be distinguished from a situation in which a party fails to make a timely assertion of a right - what courts typically call a 'forfeiture.' The difference is critical: a waived issue ordinarily cannot be resurrected on appeal, whereas a forfeited issue may be reviewed for plain error." (citations omitted)). Because it is unclear from the record how (or if) Negrón-Rossy actually challenged the § 3B1.1(c) enhancement below, we proceed

to review for plain error.[1]  See United States v. Rivera-Rodríguez, 489 F.3d 48, 59 (1st Cir. 2007).  To prevail, Negrón-Rossy must show (1) that an error occurred; (2) which was clear or obvious and which not only; (3) affected his substantial rights; but also (4) seriously impaired the fairness, integrity, or public reputation of the judicial proceedings.  United States v. Leahy, 668 F.3d 18, 23 (1st Cir. 2012).

To justify the application of a § 3B1.1(c) enhancement, the evidence need only show that the defendant exercised authority or control over another participant on one occasion.  United States v. Prange, 771 F.3d 17, 34 (1st Cir. 2014).  Indeed, simply recruiting a single co-defendant, by itself, constitutes a managerial function.  Id.  We also consider the following factors:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

United States v. Savarese, 686 F.3d 1, 19-20 (1st Cir. 2012) (quoting U.S. Sentencing Guidelines Manual § 3B1.1, cmt. 4).

---

[1] However, to the extent that Negrón-Rossy now disputes the factual allegations set forth in the PIR, those claims were plainly waived, and we conduct our review with the assumption that the allegations are true.  See United States v. Turbides-Leonardo, 468 F.3d 34, 37-38 (1st Cir. 2006).

Negrón-Rossy contends that there was insufficient evidence that he was an organizer, leader, manager, or supervisor of the conspiracy. He also argues that the district court erred by failing to address the enhancement at the sentencing hearing. We reject both arguments.

As an initial matter, the record provides an ample basis on which to conclude that Negrón-Rossy did in fact occupy a supervisory role. The PIR gives several examples of relevant conduct: (1) in 2012, Negrón-Rossy traveled to the Dominican Republic in order to coordinate the importation of a drug load; (2) Negrón-Rossy recruited a co-conspirator and instructed him to hire stevedores to offload narcotics from container ships upon arrival; (3) Negrón-Rossy "coordinated" the participation of a second co-conspirator who was responsible for distributing some of the narcotics during the course of the conspiracy; and (4) Negrón-Rossy arranged to purchase a shift from a colleague in April 2012 in order to supervise the arrival of a narcotics shipment. Negrón-Rossy did not dispute these facts before the district court and, despite his arguments to the contrary, they are adequate to justify application of a two-point enhancement pursuant to § 3B1.1(c).

Nor does the district court's failure to address the enhancement at sentencing merit reversal. Negrón-Rossy did not object to the enhancement and, as we have said, the issue was not raised at the sentencing hearing. What is more, in our view, the

basis for the application of the enhancement was plainly clear on the record, obviating the need for the district court to specifically address it.  See United States v. Medina, 167 F.3d 77, 80 (1st Cir. 1999) ("In many circumstances, the basis for a role-in-the-offense enhancement will be apparent from the record. When this is not so, however, the sentencing court, in order to apply such an enhancement, must make a specific finding which identifies those being managed 'with enough particularity to give credence to the upward adjustment.'" (quoting United States v. McDowell, 918 F.2d 1004, 1011 (1st Cir. 1990)).

For these reasons, we affirm Negrón-Rossy's sentence.